**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:06CV46-V-02**
**(3:03CR59-01-V)**

| | |
|---|---|
| **CHABLIS DIOR DANDRIDGE,** )<br>    **Petitioner,** )<br>                            )<br>    v.                      )<br>                            )<br>**UNITED STATES OF AMERICA,** )<br>    **Respondent.** )<br>_____) | **ORDER** |

**THIS MATTER** comes before the Court on a pleading captioned as "Petitioner's [sic] Pleads To Re-Call The Mandate Due To Intervening Change In Law And Court's Provisional Judgment," filed July 13, 2005. For the reasons stated herein, and for the further reasons stated in the Court's Order of February 2, 2006 (document # 1), such pleading will be construed as a motion to vacate, and it will be granted.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

According to the record, on September 24, 2003, the petitioner (along with three other individuals) was named in a Superceding Bill of Indictment which charged him with conspiracy to possess with intent to distribute at least 50 grams of cocaine base, in violation of 21 U.S.C. §§841(a)(1) and 846 (Count One); it charge him with using and carrying or possessing a firearm during and in relationship to a drug trafficking offense, in

violation 18 U.S.C. §924(c) (Count Two); and it charged him with possession with intent to distribute cocaine base, in violation of 21 U.S.C. §841(a)(1) (Count Three).

On March 15, 2004, the petitioner entered into a written Plea Agreement with the government by which he agreed to tender guilty pleas to Counts One and Two. Such Agreement further stipulated that the amount of cocaine base for which the petitioner could be held responsible was more than 50 grams but less than 150 grams.

Next, on March 25, 2004, the Court held a Plea & Rule 11 Hearing, during which the petitioner tendered his guilty pleas. At the conclusion of that Hearing, the Court conditionally accepted the petitioner's pleas and scheduled this matter for sentencing.

Thereafter, on August 18, 2004, the Court conducted a Factual Basis & Sentencing Hearing in this matter. After hearing from counsel for the parties, the Court announced its sentence. In particular, the Court announced a total sentence of 180 months imprisonment (120 months for the conspiracy conviction and 60 months consecutive for the firearm conviction) under the U.S. Sentencing Guidelines. In addition, however, the Court announced a term of 120 months (two 60-month terms for each conviction) as an "alternative, provisional" sentence.

Indeed, the Court explained that such provisional sentence

was premised upon "the same reasons as those articulated with respect to the Guidelines sentence, including the relevant factors within 18 U.S.C. §3553." The Court further explained that it was announcing the provisional sentence "[i]n light of the Supreme Court's decision in Blakely v. Washington 542 U.S. 296, (2004),[1] and as expressly directed by the Fourth Circuit Court of Appeals . . . [in] United States v. Hammoud, 381 F.3d 316, 353-54 (4th Cir. 2004) . . . ." The Judgment form evidencing the petitioner's conviction and sentence was filed on September 21, 2004.

On January 12, 2005, the U.S. Supreme Court announced its decision in United States v. Booker/Fanfan, 125 S.Ct. 738 (2005). As was anticipated by many, in Booker/Fanfan, the Supreme Court announced both that its ruling in Blakely was applicable to federal cases. Equally critically, Booker/Fanfan announced that the mandatory provisions of the Guidelines are invalid to the extent they permit judges to rely upon uncharged, judge-found facts in the calculation of defendants' sentences.

Notwithstanding such a significant decision, the petitioner's former trial counsel did not file a direct appeal in order to ensure that the Court's provisional sentence would take

---

[1] In Blakely, the Supreme Court invalidated a State court's practice of using judge-made findings in the calculation of defendants' sentences, and expressly held that for Apprendi purposes, the statutory maximum term is the "maximum sentence the judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."

3

effect.  Thus, on July 13, 2005, the petitioner filed the instant document seeking to recall the Court's final Judgment of Conviction in order to have his provisional sentence imposed. That is, by this pleading the petitioner is seeking to have his provisional 120-month sentence imposed in the place of the 180-month sentence which he now is serving.

In response to the petitioner's pleading, on November 30, 2005, the Court entered an Order explaining the posture of the petitioner's case, and further advising that given certain post-Booker developments in the Fourth Circuit Court of Appeals, it was unlikely that the petitioner's lower provisional sentence would be self-executing.  Thus, the Court's Order advised of its inclination to treat the petitioner's pleading as a motion to vacate, with the goal being that the petitioner ultimately would be given an opportunity to appeal his sentence.  However, in light of the decision in United States v. Emmanuel, 288 F.3d 644, 649 (4th Cir. 2002), the Court gave the petitioner an opportunity to object to its conversion of his pleading into a motion to vacate.

On January 24, 2006, the petitioner filed his Response to the Court's November 2005 Order.  Although he did not expressly ask the Court to convert his pleading to a motion to vacate, the petitioner also did not oppose such conversion.  Moreover, the petitioner's Response raised arguments which clearly were couched

4

in habeas terms. Thus, by Order of February 2, 2006, the petitioner's pleading was converted to a motion to vacate under 28 U.S.C. §2255.

Now, after having reviewed the subject motion along with the relevant legal precedent, the Court concludes, out of an abundance of caution, that such motion to vacate should be granted, but only for the purpose of allowing the petitioner to pursue a direct appeal of his sentence.

## II. **ANALYSIS**

The petitioner's documents, liberally construed, tend to establish that defense counsel failed to consult with him concerning his desires about an appeal; and that had the petitioner fully understood his options, he actually would have asked his attorney to pursue an appeal of his sentence (see "Petitioner's Response . . ." at p.2, 3:03CR59-1, document # 103). As such, the petitioner's claims are controlled by the United States Supreme Court's decision in Roe v. Flores-Ortega, 528 U.S. 470 (2000).

In Roe, the Supreme Court stated that although there is no per se requirement that counsel do so, "the better practice is for counsel routinely to consult with the defendant about an appeal." Id. at 479. In this instance, consult means to advise the defendant of the advantages and disadvantages of an appeal and to make "a reasonable effort to discover the defendant's

5

wishes." Id. at 477-78.

Thus, in cases where the defendant has neither asked counsel to appeal nor directed counsel not to appeal, and counsel has not consulted with the defendant regarding his appellate rights, counsel's failure to consult will be deemed deficient in either of two circumstances. That is, counsel's failure to consult will be deemed deficient "when there is reason to think either (1) that a rational defendant would want to appeal . . . , or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." Id. at 480. The Supreme Court further stated that in making this determination, a court must consider all relevant factors which are before it.

In the instant case, the record reflects that the Court announced a 180-month sentence under the Guidelines, and a much lower 120-month alternative, provisional sentence. As reflected on the Judgment form, the Court's alternative sentence was imposed "in the event the Federal Sentencing Guidelines are ultimately invalidated by final action of the U.S. Supreme Court . . . ." Thus, inasmuch as the Booker/Fanfan decision did, in fact, invalidate the use of the Sentencing Guidelines under the circumstances which here were employed in the calculation of the petitioner's 180-month sentence, former defense counsel had reason to know that the petitioner would have wanted to take whatever measures were necessary, including the pursuit of an

appeal, in order to obtain the lower sentence. Unfortunately, however, counsel did not discuss this option with the petitioner; therefore, the petitioner never was afforded an opportunity to express his desire for an appeal.

In deference to former counsel, the Court believes it is likely that counsel presumed that the petitioner's 120-month provisional sentence would be self-executing based upon the Booker/Fanfan decision. However, in the absence of some legal precedent to support that proposition, counsel's incorrect presumption was quite costly to his client. In any event, on this record, the Court has no choice but to find that defense counsel was deficient for having failed to consult with the petitioner regarding his appellate rights and options.

Moreover, based upon the foregoing, there also is a more than reasonable probability that but for counsels' failure to consult with the petitioner, the petitioner would have insisted upon the timely filing of an appeal in his case. Thus, the Court also must find that the petitioner has demonstrated that he was prejudiced by his attorneys' failure to consult with him about his appellate rights because counsel's failure resulted in the loss of his appeal.[2]  Roe, 528 U.S. at 484.

---

[2]The Court is aware that the petitioner's Plea Agreement contained a waiver clause, precluding his ability to directly appeal his case. However, such provision does not excuse counsel's failure to discuss an appeal with the petitioner, particularly since the government might not have sought to enforce such waiver in order to ensure that the Court's intentions were realized, or the Court of Appeals might have found the waiver unenforceable for that same reason.

7

Ultimately, in light of <u>Roe</u>, this Court concludes that the petitioner's Motion to Vacate must be <u>granted</u>. That is, in cases such as this one, the prescribed remedy is to vacate the original Judgment and enter a new Judgment from which an appeal can be taken. <u>See</u> <u>Evitts v. Lucey</u>, 469 U.S. 387 (1985) (finding the defendant entitled to a new appeal when counsel's failure to comply with mechanistic local court rules led to the dismissal of his first appeal). Thus, the Court will vacate its Judgment so that the petitioner may appeal his sentence.

### III. **NOTICE OF APPELLATE RIGHTS**

Mr. Dandridge, you are hereby advised that you have an absolute right to appeal your criminal case and any issues in it to the Fourth Circuit Court of Appeals. If you decide to do that, you will have to file a Notice of Appeal with the Clerk of this District Court within 10 days after the day your new Judgment of conviction is filed with this Court, or within 10 days after any Government appeal is filed with this Court, whichever day comes later. The Clerk will assist you in preparing your Notice of Appeal if you so request.

If you previously were determined to be indigent in connection with your criminal case, or if you now are indigent and are unable to pay for an appeal, you may request permission to proceed on appeal without prepayment of the applicable filing fees. You should discuss the question of appeal with your

attorney, if you have one, but whatever he or she may tell you, the responsibility for filing the Notice of Appeal remains with you, and you must file such Notice within the aforementioned 10-day period in order to make it effective.

### IV. ORDER

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1. That the petitioner's motion to vacate is **GRANTED**;

2. That the petitioner's original Judgment is **VACATED**;

3. That the Clerk is directed to prepare a new Judgment for the petitioner, imposing the same sentences and conditions as were imposed by the original Judgment form;

4. That the petitioner may appeal from his new Judgment as has been explained in this Order.

5. That the Clerk shall send copies of this Order to the petitioner and to the United States Attorney for the Western District of North Carolina.

**SO ORDERED.**

Signed: February 6, 2006

Richard L. Voorhees
Chief United States District Judge